IN THE MATTER OF DAVID N. HEYWOOD, JR., AN
ATTORNEY AT LAW.

February 4, 1985.

## ORDER

This matter having come before the Court on an Order to Show Cause why DAVID N. HEYWOOD, JR. of EAST ORANGE should not be disbarred or otherwise disciplined for his violations of *DR* 1–102(A)(3), (4), and (6), *DR* 2–106(A), *DR* 6–101(A)(1), and *DR* 9–102(B)(1), (3) and (4), and said DAVID N. HEYWOOD, JR. having failed to appear before this Court on the return date of said Order to Show Cause, and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board recommending that respondent be disbarred is hereby adopted; and it is further

ORDERED that DAVID N. HEYWOOD, JR. be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that DAVID N. HEYWOOD, JR. be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that DAVID N. HEYWOOD, JR. reimburse the Ethics Financial Committee for appropriate administrative costs.

### *Report of the Disciplinary Review Board*

This matter is before the Board based upon a presentment filed by the District V (Essex County) Ethics Committee. The presentment incorporates four complaints filed against Respondent by former clients pertaining to misappropriation of funds and a failure to carry out a contract of employment.

These charges are summarized as follows:

### 1. BATTS COMPLAINT

In December 1977, the Messiah Baptist Church of East Orange had been bequeathed three residential properties: two were 10-unit apartment buildings and one was a 12-unit apart-

ment building. Respondent, who had served as counsel to the church and had provided various legal services to members of the congregation, convinced the church's Board of Trustees that these properties were not being properly managed. In January 1978, the Board agreed to Respondent's proposal that he manage the properties. No written retainer agreement was prepared or signed by the parties. Under the terms of their oral agreement, Respondent was to receive a fee equal to ten percent of the gross rental income received. He was to be responsible for rent collections, property management and maintenance, and payment of expenses, such as mortgages, insurance and property taxes. Respondent created the MBC corporation, but it was never officially incorporated and the property was never conveyed to it. Some of the tenants made their rental checks payable to this corporation. In those cases, Respondent endorsed those checks "for deposit only" as attorney for the company. The money was deposited into his account.

During 1978 and 1979, the church made numerous requests of Respondent for an accounting. Respondent, however, would reply that he was too busy to prepare these reports and suggested that the church leaders look at his ledger sheets. Respondent explained that the properties were in bad shape and he needed money to maintain them. The church only received verbal reports from Respondent concerning revenues, expenses and the fees which Respondent was receiving from this project. While the church was not satisfied with Respondent's lack of accounting, its primary concern was not the profit earned, but the maintenance of the property, the payment of expenses and the satisfaction of the tenants. The church wanted to provide housing for its elderly and indigent members. It had not received any complaints from the tenants.

Respondent collected the rents and paid the expenses for the properties until December 1, 1980 when he, without notice to anyone, stopped paying the expenses. He had received $21,543

in rental income after this date, which he did not use to pay any property expenses.

In April or May 1981, the Rev. Harry L. Batts, church pastor, was notified by the mortgagee-bank that the church was in default of its mortgage payments for these three properties. In the months following, the church leaders were unsuccessful in contacting Respondent. When they did contact him, he assured them not to worry about the notice, explaining that he had not had time to pay the bills but promised that he would. Respondent, however, did not pay the money due and the church lost the properties in foreclosure proceedings.

Later, the church was reimbursed $25,000 by the Clients' Security Fund of its claimed loss of $45,007.82 which represented the amount necessary to bring current the accounts as of December 31, 1981.

Respondent did not respond to the complaint and did not appear before the District V Ethics Committee's hearing on February 14, 1983. The hearing panel deemed the testimony uncontested and concluded that Respondent violated *DR* 1–102(A)(4), 6–101(A), (1) and 9–102. It recommended that Respondent be disbarred.

### 2. SCOTT COMPLAINT

After the death of her Aunt on June 17, 1979, Nancy L. Scott retained Respondent, whom she had known because he had provided legal services for her aunt. Ms. Scott wanted Respondent to change the deed of her aunt's house to her name. She was the executrix of the estate and did not want any problems should she later decide to sell the house. She also wanted Respondent to draw up a will for her and to create a trust fund for her daughter.

Ms. Scott paid Respondent $5,000 by check dated August 8, 1980. She had received this amount from her aunt's estate and she gave him the full amount with the thought that any balance would be applied to her daughter's trust account.

She made several unsuccessful attempts to contact Respondent between June 1979 until 1981. His secretary would inform her that Respondent was not in the office, but that he would return her call. She eventually became discouraged and stopped calling.

Ms. Scott later spoke to an attorney friend of hers who picked up her file from Respondent's office. She learned at that time that he had not done anything for which she had retained him. She then learned that Respondent had been suspended from the practice of law. The Clients' Security Fund reimbursed her $5,000.

Respondent did not respond to this complaint and did not appear at the District V Ethics Committee's hearing. The hearing panel deemed the testimony uncontested and found that Respondent violated *DR* 1–102, 2–106, 6–101, 7–101 and 9–102. It recommended that Respondent be disbarred.

### 3. PURAFORI COMPLAINT

On October 22, 1979, the Windows of Heaven Prayer Chapel Mission of Hope Center, Inc., gave Respondent $7,000 to hold in trust for the payment of taxes on property held by the church in East Orange. This amount represented partial payment for tax arrearages.

The city, however, refused to accept the check. Respondent informed the Rev. Rebecca Purafori that the city would not accept partial payment and that he would return the money to the church. About a year later, on September 25, 1980, she received a check drawn on Respondent's account for the full amount. The check, however, was returned for insufficient funds. When she informed Respondent of this, he promised a replacement check, which she received on October 6, 1980. It, too, was returned for insufficient funds.

The Rev. Purafori did not attend the District V Ethics Committee hearing due to inclement weather. Respondent did not answer the complaint and did not appear at the hearing. The

panel concluded that the uncontested facts provided clear and convincing proof that Respondent violated *DR* 1–102(A)(4), 6–101(A)(1), and 9–102. It recommended that Respondent be disbarred.

### 4. ROSS COMPLAINT

In December 1978, Joseph C. Ross retained Respondent to assist in the sale of his home in East Orange. The home sold for $23,000. In January 1979, Respondent advised Mr. Ross that he should invest $18,000 of this amount in an apartment house owned by the Messiah Baptist Church which he managed. Mr. Ross was told that he would receive a return on his investment of $418.83 a month for a five-year period in addition to having the principal returned to him. Mr. Ross gave Respondent an $18,000 check, but did not receive a receipt from Respondent.

For 26 months beginning September 1979 and ending March 1981, Respondent paid the promised amount to Mr. Ross. During this period, Mr. Ross received $10,889.58. In April 1981, however, the check drawn on Respondent's trust account for that monthly amount was returned marked insufficient funds. Mr. Ross did not receive any payments after that time. He was reimbursed by the Clients' Security Fund the amount of $7,110.42, which restored his principal to him.

Mr. Ross had not filed a complaint with the District V Ethics Committee; this matter had been referred to the Committee by the Clients' Security Fund. Mr. Ross did not appear before the Committee. He did, however, testify under oath before the Clients' Security Fund on January 19, 1982, confirming the findings above. The transcript of that hearing has been incorporated by the Board into its record which is submitted to the Court.

Respondent had not filed an answer to the Committee's inquiries and failed to appear before it at the hearing. The panel deemed the allegations in the verified statement of claim

which Mr. Ross had filed with the Clients' Security Fund to be uncontested. It found that Respondent violated *DR* 1–102(A)(3), (4), (5) and (6), 5–101(A), 5–104(A), 6–101(A), 7–101(A)(1) and 9–102(B)(3). It recommended that Respondent be disbarred.

### 5. DIVISION OF ETHICS & PROFESSIONAL SERVICES COMPLAINT

On June 3, 1982, an eight-count complaint was filed against Respondent by the Division of Ethics & Professional Services. He was charged with failing to maintain records concerning his client's trust account (Count One); failing to maintain a client's ledger account book (Count Two); failing to apply rental income for the benefit of the Messiah Baptist Church (Count Three); failing to maintain sufficient funds in his trust account, causing a check for $484.01 *In the Matter of the Estate of Lucille Russell* to be returned for insufficient funds (Count Four); failing to maintain sufficient funds in his trust account, causing a check for $7,000 to the Windows of Heaven Prayer Chapel to be returned because of insufficient funds (Count Five); overdrawing his business account on four occasions (Count Six); failing to make payments to a client, Joseph Ross, as agreed (Count Seven); and failing to adequately protect the interest of his client, Francine Matthews, in a child support dispute (Count Eight). Respondent never filed an answer to these allegations.

### 6. CLIENTS' SECURITY FUND CLAIMS

The Clients' Security Fund as of July 24, 1984 has paid out $84,534.48 to 13 former clients of Respondent. Six of these were unearned retainers. Three additional claims are pending before the Fund.

Respondent was temporarily suspended from the practice of law on March 24, 1981. The Court ordered the suspension continued on April 7, 1981 pending resolution of the complaints

against Respondent. 85 *N.J.* 518. This Order remains in effect to date.

On January 4, 1984, an Essex Grand Jury returned Indictment 178–84 against Respondent, charging him with four counts of theft by failure to make required disposition of properties received, contrary to *N.J.S.A.* 2C:20–9. He is charged with the theft of $7,000 from Windows of Heaven Chapel (Count One); $17,368 from the Messiah Baptist Church (Count Two and Count Three); and $5,000 from Nancy Scott (Count Four). Due to Respondent's absence from the jurisdiction, he has never been arraigned on these charges.

### 7. NOTICE

Numerous attempts had been made to notify Respondent of the proceedings against him before the District V Ethics Committee and this Board. Notification had been sent to his last business and home address and publications were made in the news media, including the *New Jersey Law Journal.* Respondent did not appear before the Ethics Committee's panel hearing and did not appear before the Board's hearing on March 21, 1984.

### CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Committee in finding Respondent guilty of unethical conduct are fully supported by clear and convincing evidence.

In the Batts matter, Respondent undertook the responsibility of managing three income producing properties for the Messiah Baptist Church, including the collection of rent and payment of expenses. In return, he received as a fee ten percent of the rental income. After he unilaterally curtailed his management responsibilities, he nevertheless collected $21,543 in rental income for which he has never accounted. In fact, he totally failed to account to the Church at any time. His conduct

resulted in the church losing the three properties in foreclosure proceedings.

■ During the course of his management of the properties, church officials had made numerous requests of him to render an accounting. He did not do so. The Board finds that his conduct violated *DR* 1–102(A)(3), (4), (6) and 9–102(B)(1), (3) and (4) by failing to maintain proper trust account records.

■ The Board further finds that Respondent misappropriated the church's money and that his conduct violated *DR* 1–102(A)(4) in that his conduct involved dishonesty, fraud, deceit or misrepresentation, and *DR* 6–101(A)(1) in that he handled or neglected a legal matter entrusted to him in such a manner that his conduct constituted gross negligence.

The facts in this case alone are sufficient for the Board to recommend that the Respondent be disbarred. He misappropriated money belonging to the Messiah Baptist Church and caused the church and its congregation financial hardship, as well as the loss of three-income producing properties. Misappropriation of a client's money mandates disbarment. *In re Wilson*, 81 *N.J.* 451, 453 (1979).

Respondent not only misappropriated funds belonging to the Messiah Baptist Church, but from others as well. The listing of his clients who had to be reimbursed by the Clients' Security Fund is extensive. The aggregate amount reimbursed exceeded $84,000, inclusive of the funds the church received.

■ The Board further finds that Respondent violated *DR* 2–106(A) in that the $5,000 retainer which he accepted from Ms. Scott was excessive.

■ Whereas the complainants in the Ross and Windows of Heaven Chapel matters did not testify before the District V Ethics Committee panel, the Committee nevertheless proceeded upon the documentary evidence available to it. This procedure was proper under the circumstances. "It is not necessary for a complainant to appear before an Ethics Committee." *In re*

*Krakauer,* 81 *N.J.* 32, 34 (1979). There are complaints of a serious nature that should and must be pressed against respondents. *Krakauer, Ibid.*

█ In the Ross matter, moreover, sworn testimony was taken before another body which also serves as an arm of the Court in attorney disciplinary matters. The Board, therefore, finds that the Respondent failed to account for and misappropriated money entrusted to him by his client in violation of *DR* 9–102(B)(4) and 1–102(A)(3), (4) and (6).

█ In reaching its recommendation that Respondent be disbarred, the Board has relied primarily on those matters in which sworn testimony was taken. In these three matters alone, it has been clearly and convincingly demonstrated that Respondent misappropriated substantial sums from his unsuspecting clients. The additional monies reimbursed to numerous clients of Respondent further reinforce the conclusion that Respondent is unequivocally unfit to be a member of the Bar of this State.

The Board further recommends that Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.